UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---

JOHN A. OLSSON,

                              Plaintiff,

                    v.

ABM TAXI DISPATCH LAGUARDIA AIRPORT,

                             Defendant.

**ORDER**

18 Civ. 8815 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this employment discrimination action, pro se plaintiff John Olsson alleges that ABM Aviation, Inc. ("ABM") – incorrectly named as "ABM Taxi Dispatch Laguardia Airport" – discriminated against him on the basis of his race. (Cmplt. (Dkt. No. 1-1)) Liberally construed, the Complaint asserts (1) a wrongful termination claim under state law, and (2) claims of race discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (Sept. 18, 2019 Order (Dkt. No. 20) at 1, 4)[1]

        ABM moved to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. (Def. Br. (Dkt. No. 14)) On September 18, 2019, this Court (1) granted ABM summary judgment on Plaintiff's wrongful termination claim, and (2) granted ABM's motion to dismiss Plaintiff's Title VII, NYSHRL, and NYCHRL claims. (Sept. 18, 2019 Order (Dkt. No. 20) at 25) The Court further ruled that it would not exercise supplemental jurisdiction over Plaintiff's NYCHRL claims (id. at 24), but granted Plaintiff leave

---

[1] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

to amend his Title VII and NYSHRL claims. (Id. at 25) The Court ordered that any motion for leave to amend was to be filed by October 15, 2019. (Id.) No such motion was filed by that date.

On December 2, 2019, Plaintiff filed a document styled as an "Opposition to Order of Summary Judgment," which includes a timeline of allegations related to Plaintiff's claims. (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 2, 7) In a December 20, 2019 letter, Plaintiff further alleges that his new employer, Hampton Inn - Times Square, terminated him as a result of an ABM supervisor's comments disparaging him. (Dec. 20, 2019 Pltf. Ltr. (Dkt. No. 28) at 2) Construing these filings as a motion to amend, the motion will be denied, and the case will be dismissed.

## BACKGROUND

### I.     ALLEGED FACTS

Plaintiff's supplemental filings largely repeat allegations set forth in the Complaint. Unlike the Complaint, however, the recent filings generally note the date when alleged events took place.[2]

On June 7, 2017, Plaintiff – who identifies as a "Eurasian male" – was hired by ABM to work as a taxi dispatcher at LaGuardia Airport. (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 2, 7) Sierra Orval – who is black – was hired for the same position on June 20, 2017. (Id. at 7) Plaintiff describes Orval as one of his "antagonists," and he had several "verbal altercation[s]" with her during his employment at ABM. (Id. at 2, 7)

---

[2] The Complaint's allegations are summarized in the Court's September 18, 2019 order. (Dkt. No. 20)

On July 6, 2017, Orval "abandoned her post" to talk on her cell phone. (Id. at 7) When Plaintiff confronted Orval, she "ignored [his] request to return to [her] post." (Id.) Plaintiff reported the incident to a supervisor. (Id.)

On August 2, 2017, Plaintiff "witnessed [Orval] carelessly dropping a hand held printing device used for issuing coupon tickets to cab drivers." (Id.) Plaintiff told Orval that she should use a shoulder strap for the device, but she refused. (Id.)

On August 10, 2017, Orval – in the presence of two other black dispatchers – "referred to Orientals as having 'chinky eyes.'" (Id. at 8)

On October 17, 2017, Plaintiff had a "verbal altercation" with Ruben Baptist, another black dispatcher, after Plaintiff told Baptist to "tell the cab drivers . . . to have their [top] lights turned on." (Id.) Baptist responded, "you do your job, and I'll do mine." (Id.) Plaintiff filed a "written complaint" against Baptist, but "[n]othing was done." (Id.)

On December 20, 2017, Plaintiff had a "verbal altercation" with Devonte Beekman – "a black co-worker" who was allegedly involved in a romantic relationship with Orval. (Id. at 9) Plaintiff repeatedly asked Beekman to let him use his dispatch radio, but Beekman refused. (Id.) After Plaintiff asked a third time, Beekman said, "suck my dick." (Id.) Plaintiff responded by saying, "fuck you, nigger." (Id.) According to Plaintiff, Beekman and Orval "used the word 'nigger' in practically every other sentence." (Id. at 8)

A black supervisor named Glenda "showed up" and "reprimand[ed] [Plaintiff] for using the 'N' word" (id. at 9), while Beekman "began to verbally make physical threats against [Plaintiff]." (Id.) Plaintiff told Glenda that "you cannot allow one group of people to use a word, while prohibiting another group from using it." (Id.) After the incident, Glenda assigned

3

Beekman to another post. (Id.) Plaintiff "filed a written complaint and incident report," but nothing was done. (Id.)

On February 18, 2018, a verbal altercation took place between Plaintiff and a dispatcher named Brandi DeCarlo, whom Plaintiff describes as a "Puerto Rican welfare queen . . . who spoke more 'ghetto' than most blacks." (Id.) Plaintiff filed a written complaint against DeCarlo after she threatened to "kick [his] ass" for reporting that she had abandoned her post. (Id.) No action was taken in response to Plaintiff's complaint. (Id.)

On April 5, 2020, DeCarlo "wrote insulting comments" about Plaintiff on "tickets" that taxi drivers had given him. (Id. at 10) Plaintiff "filed another complaint," but ABM "managers and supervisors did nothing." (Id.)

On May 17, 2018, Plaintiff had another "verbal altercation" with Orval. (Id.) Plaintiff "used the 'N' word along with other insults" after Orval "insult[ed] [Plaintiff's] mother and daughter." (Id.) That day, two unnamed black supervisors informed Plaintiff that he "would be terminated" and "asked [him] to leave the premises." (Id.) According to Plaintiff, however, he was not "officially terminated" until June 5, 2018, after a meeting in which Plaintiff's union representative was present. (Id. at 3, 10-11) According to Plaintiff, his termination resulted from ABM managers' "acceptance of double standards, racially biased ineptitude, and procrastination." (Id. at 11)

In May 2018, "ABM's black supervisor Naomi, who is of Jamaican descent," made "disparaging" comments about Plaintiff during a reference check for other positions. (Dec. 20, 2019 Pltf. Ltr. (Dkt. No. 28) at 3, 6) These comments allegedly resulted in Plaintiff (1) not being hired for a position with "TLC Outsourcing" sometime after his termination from ABM,

4

and (2) being terminated from a maintenance position at the Hampton Inn - Times Square in December 2019. (Id. at 2-3; Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 3)

## II.   PROCEDURAL HISTORY

The Complaint was filed on August 17, 2018, in the Supreme Court of the State of New York, New York County. (Cmplt. (Dkt. No. 1-1) at 2) The Complaint was served on September 7, 2018 and removed to this District on September 26, 2018. (Notice of Removal (Dkt. No. 1) ¶ 1) On October 17, 2018, ABM moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. (Def. Br. (Dkt. No. 14))

On September 18, 2019, this Court (1) granted ABM summary judgment on Plaintiff's wrongful termination claim, and (2) granted ABM's motion to dismiss Plaintiff's Title VII, NYSHRL, and NYCHRL claims. (Sept. 18, 2019 Order (Dkt. No. 20) at 25) The Court ruled that it would not exercise supplemental jurisdiction over Plaintiff's NYCHRL claims (id. at 24), but granted Plaintiff leave to amend his Title VII and NYSHRL claims. (Id. at 25) The Court's September 18, 2019 Order states that "[a]ny motion for leave to file an Amended Complaint must allege facts showing . . . (1) Plaintiff was discharged because of his race; (2) he subjectively experienced a hostile work environment; and (3) ABM would not have provided him with a negative reference but for his participation in "protected activity." (Id.) The deadline to move for leave to amend was October 15, 2019. (Id.)

As discussed above, no motion for leave to amend was filed by October 15, 2019. Instead, on December 2, 2019, Plaintiff filed a letter which included a timeline of events relevant to his claims. (Dec. 2, 2019 (Dkt. No. 25) at 7-11) In a December 17, 2019 letter, ABM argued that "if the Court were inclined to construe Plaintiff's filing [as] a motion to amend the

5

Complaint, it should reject his submission" for failure to comply with the Court's September 18, 2019 Order, given that Plaintiff's submission was filed after the October 15, 2019 deadline and did not include a proposed amended complaint as an exhibit. (Dec. 17, 2019 Def. Ltr. (Dkt. No. 27) at 1) ABM also argued that "any Amended Complaint would be futile." (Id.)

On December 20, 2019, Plaintiff filed another letter in which he claimed that he was terminated by Hampton Inn - Times Square because of disparaging remarks made by an ABM supervisor. (Dec. 20, 2019 Pltf. Ltr. (Dkt. No. 28) at 2) In a December 30, 2019 letter, ABM argues that "Plaintiff's letter appears to be yet another improper attempt to amend the Complaint." (Dec. 30, 2019 Def. Ltr. (Dkt. No. 29) at 1) According to ABM, "Plaintiff's letter only serves to reinforce why any Amended Complaint would be futile and subject to dismissal," because Plaintiff "is still unable to articulate a retaliation claim because he fails to allege that he ever engaged in any protected activity." (Id.)

## DISCUSSION

### I. LEGAL STANDARD

District courts have "broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). The Second Circuit has cautioned that district courts "'should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). A court may properly deny leave to amend, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

6

of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "'Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).

As noted above, "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Id. (internal citations omitted).

## II. ANALYSIS

Liberally construed, Plaintiff's December 2, 2019 and December 20, 2019 letters seek leave to amend the Complaint in response to this Court's September 18, 2019 Order. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). For the reasons set forth below, Plaintiff's motion will be denied.

### A. Procedural Deficiencies

As an initial matter, Plaintiff's motion is deficient because it does not include a proposed amended complaint, even though the Court instructed Plaintiff to include a proposed amended complaint with any motion to amend. (Sept. 18, 2019 Order (Dkt. No. 20) at 25 ("The proposed Amended Complaint must be attached as an exhibit to the motion.")) Plaintiff also did not comply with this Court's October 15, 2019 deadline for any motion to amend. Plaintiff's

first supplemental letter was filed on December 2, 2019, more than six weeks after the October 15, 2019 deadline. (Id.) These circumstances standing alone justify denying Plaintiff's motion for leave to amend. Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d. Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order. . . ."); Couture v. Blair, No. 5:16-CV-304-GWC-JMC, 2017 WL 9250324, at *2 (D. Vt. Aug. 25, 2017) ("[Plaintiff's] Motion to Amend . . . is not offered in good faith because he did not include a proposed amended complaint, in violation of both the Local Rules and the Federal Rules of Civil Procedure. On this basis alone, [Plaintiff's] Motion should be DENIED."). Given Plaintiff's pro se status, however, the Court will consider the merits of his motion.

### B. Merits

Plaintiff's proposed amendment is futile, because the amended complaint would not withstand a motion to dismiss. See Lucente, 310 F.3d at 258 ("One appropriate basis for denying leave to amend is that the proposed amendment is futile."). Indeed, Plaintiff's December 2019 letters do little more than repeat the allegations set forth in the Complaint, even though this Court has already ruled that those allegations fail to state a claim. (Sept. 18, 2019 Order (Dkt. No. 20))

#### 1. Race Discrimination

"[C]laims of discrimination under the NYSHRL are analyzed under the same standard as a Title VII claim."[3] Thomson v. Odyssey House, No. 14-CV-3857 MKB, 2015 WL

---

[3] In August 2019, the "NYSHRL was amended . . . to provide that its provisions should be construed liberally 'regardless of whether federal civil rights law, including those laws with provisions worded comparably to the provisions of this article, have been so construed.'" Deveaux v. Sketchers USA, Inc., No. 19CV9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020) (quoting NY Legis 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421)).

5561209, at *14 (E.D.N.Y. Sept. 21, 2015) (citing Vargas v. Morgan Stanley, 438 F. App'x 7, 9 (2011) (summary order)); see also Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 n.9 (2d Cir. 2008) (courts "treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims"). Title VII prohibits an employer from discriminating "against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). To state a Title VII claim, a plaintiff must "allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)(1)). "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." Id. (internal quotation omitted) (emphasis in original).

    As in the Complaint, Plaintiff recounts that Orval once "referred to Orientals as having 'chinky' eyes." (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 8; see also Cmplt. (Dkt. No. 1-1) at 14) Plaintiff also complains that while he was terminated for using "the 'N' word" during verbal altercations with black co-workers, other ABM employees engaged in similar misconduct

---

These amendments "effectively rendered the [NYSHRL] standard . . . closer to that of the New York City Human Rights Law." Livingston v. Roosevelt Union Free Sch. Dist., No. 17CV4189JMASIL, 2020 WL 1172642, at *11 (E.D.N.Y. Jan. 15, 2020), report and recommendation adopted, 2020 WL 1166450 (E.D.N.Y. Mar. 11, 2020). The amendments do not apply retroactively, however. Id.; see also Killoran on behalf of A.K. v. Westhampton Beach Sch. Dist., No. 18-CV-3389 (JS)(SIL), 2020 WL 1325572, at *9 n.10 (E.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1433647 (E.D.N.Y. Mar. 11, 2020) ("On August 12, 2019, several amendments to the NYSHRL were signed into law. These changes . . . do not apply retroactively. . . ."). Because Plaintiff's ABM employment ended in June 2018, the amendments to the NYSHRL are not applicable here.

and were not punished. (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 9-10; see also Cmplt. (Dkt. No. 1-1) at 8, 11)

The Court has previously concluded that these allegations fail to support a discrimination claim, because "there is almost no direct evidence of discriminatory animus." (Sept. 18, 2019 Order (Dkt. No. 20) at 17) Plaintiff does not assert that "any supervisor made any discriminatory remarks [concerning Plaintiff's race]." Jeanty v. Precision Pipeline Solutions, LLC, et al., No. 18 CV 7721 (VB), 2019 WL 3532157, at *4 (S.D.N.Y. Aug. 2, 2019). Although Orval, a fellow ABM dispatcher, once used a racial slur, her remark has "little probative value" on the issue of whether Plaintiff's employer, ABM, discharged him based on his race. Jeanty, 2019 WL 3532157, at *4 ("[P]laintiff does not allege [that his co-worker] was a supervisor or an employee with authority to hire or fire other employees, and thus [the co-worker's] comment has little probative value regarding whether plaintiff's employer took adverse action against him based on his . . . race."). In short, Plaintiff has not alleged facts sufficient to plausibly demonstrate that ABM terminated him based on his race.

Because Plaintiff has not alleged facts that give rise to a plausible claim of race discrimination under Title VII and the NYSHRL, leave to amend Plaintiff's race discrimination claims will be denied.

### 2. Hostile Work Environment

"The standard for establishing a hostile work environment under Title VII and the New York State HRL is essentially the same." Romero v. DHL Express, Inc., No. 12-CV-1942 VEC RLE, 2015 WL 1315191, at *5 (S.D.N.Y. Mar. 24, 2015) (citing Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006)). To state a Title VII hostile work environment claim,

> a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, citations, and alterations omitted).

"A plaintiff must show that the conduct at issue is 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and 'the victim must also subjectively perceive that environment to be abusive.'" Romero, 2015 WL 1315191, at *5 (quoting Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004)).  In determining whether the alleged conduct is sufficiently severe, courts consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'" Feingold, 366 F.3d at 150 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

"For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997) (quoting Snell v. Suffolk Cty., 782 F.2d 1094, 1103 (2d Cir. 1986)); see also Kotcher v. Rosa and Sullivan Appliance Ctr., 957 F.2d 59, 62 (2d Cir.1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.").

Here, Plaintiff has not pleaded facts sufficient to demonstrate that he was subject to a hostile work environment.  As in the Complaint, Plaintiff's supplemental filings allege only one incident in which his race was referenced by a co-worker:  when Orval "referred to Orientals as having 'chinky' eyes." (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 8; see also Cmplt. (Dkt. No. 1-1) at 14)  This single remark is not sufficient to plausibly allege an "objectively hostile or

11

abusive work environment." Patane, 508 F.3d at 113; Harvin v. Manhattan & Bronx Surface Transit Operating Auth., No. 14-CV-5125 (CBA) (RER), 2018 WL 1603872, at *11 (E.D.N.Y. Mar. 30, 2018), aff'd, 767 F. App'x 123 (2d Cir. 2019) ("[A] single remark evincing a discriminatory intent is an insufficient basis for a hostile work environment claim.").

Plaintiff also complains about his black co-workers' repeated use of the "N" word (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 8), but this slur was not directed at Plaintiff or at Plaintiff's race.  As the Court previously explained, the "N" word was used with "racial enmity and as a racial epithet" only when Plaintiff disparaged Orval and Beekman.  (Sept. 18, 2019 Order (Dkt. No. 20) at 20)  The co-workers' use of the word did not give rise to a hostile work environment as to Plaintiff.  See Brooks v. CBS Radio, Inc., No. CIV.A. 07-0519, 2007 WL 4454312, at *12 (E.D. Pa. Dec. 17, 2007), aff'd, 342 F. App'x 771 (3d Cir. 2009) (a plaintiff cannot show a hostile work environment "'by pointing to comments that were directed at other individuals[,]' because the plaintiff 'cannot show that the comments would not have been uttered or written but for his race if [the plaintiff] was neither on the receiving end nor the subject of any comments'") (quoting Caver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005)) (emphasis omitted).

Because Plaintiff has not alleged facts that plausibly give rise to a hostile work environment claim, granting leave to amend as to this claim would be futile.  Accordingly, Plaintiff's motion to amend with respect to this claim will be denied.

### 3.    **Retaliation**

"[T]o state a claim for retaliation [under Title VII or the NYSHRL], a plaintiff must allege '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected

activities and the adverse employment action.'"  Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc., No. 13 CIV. 8583 DAB, 2015 WL 1515255, at *4 (S.D.N.Y. Apr. 2, 2015) (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

As in the Complaint, Plaintiff alleges that – during his search for a new job after his termination from ABM – an ABM supervisor named Naomi "made disparaging statement[s] about [Plaintiff] which prevented" him from obtaining a position with TLC Outsourcing.  (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 3; see also Cmplt. (Dkt. No. 1-1) at 16)  In his December 20, 2019 submission, Plaintiff adds that he "believe[s] strongly" that Naomi's comments about him led to his termination from the Hampton Inn - Times Square.  (Dec. 20, 2019 Pltf. Ltr. (Dkt. No. 28) at 2)

No retaliation claim under Title VII or the NYSHRL can survive absent factual allegations demonstrating that plaintiff "opposed [a] practice made unlawful by Title VII [or the NYSHRL]."  Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc., No. 13 CIV. 8583 DAB, 2015 WL 1515255, at *4 (S.D.N.Y. Apr. 2, 2015).  Plaintiff's supplemental letters contain no allegations suggesting that he ever opposed a practice made unlawful by Title VII or the NYSHRL.  Instead, Plaintiff complained to ABM about his co-workers' job performance and general misconduct.  (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 8-10)  "'[G]eneral complaints about employment concerns,'" however, "'do not constitute protected activity under Title VII.'"  Jaeger v. N. Babylon Union Free Sch. Dist., 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016) (quoting Brummell v. Webster Cent. Sch. Dist., No. 06-CV-6437, 2009 WL 232789, at *5 (W.D.N.Y. Jan. 29, 2009)); see also Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006) ("[C]omplaints centered on general allegations of harassment [or other mistreatment] unrelated

to race . . . are not protected activity under Title VII."). Because Plaintiff has not pled facts suggesting that he engaged in protected activity, his retaliation claim fails.

Moreover, as to causation, Plaintiff's recent filings do not allege that Naomi disparaged Plaintiff to other employers because Plaintiff complained about race discrimination. (Dec. 2, 2019 Pltf. Ltr. (Dkt. No. 25) at 3; Dec. 20, 2019 Pltf. Ltr. (Dkt. No. 28) at 2)  When opposing ABM's motion to dismiss, Plaintiff argued that Naomi disparaged him because she "is friends with [Plaintiff's] nemesis, Devonte Beekman." (Pltf. Opp. (Dkt. No. 16) at 5)  Given that Plaintiff has not alleged "that the speaker . . . providing the references . . . expressed negative views of [Plaintiff] . . . for retaliatory reasons," Jones v. Bloomingdale's, No. 17-CV-1974 (RA), 2018 WL 1281819, at *5 (S.D.N.Y. Mar. 8, 2018), there "is no legal or factual basis for [his] retaliation claim." McCalman v. Partners in Care, No. 01 CIV.5844(FM), 2003 WL 22251334, at *7 (S.D.N.Y. Sept. 30, 2003).

Because Plaintiff has not alleged facts that make out a plausible claim of retaliation under Title VII or the NYSHRL, his motion for leave to amend with respect to this claim will be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to amend is denied. The Clerk of Court is directed to close the case. A copy of this Order has been mailed to the pro se Plaintiff by Chambers.

Dated: New York, New York
       August 26, 2020                         SO ORDERED.

                                               Paul S. Gardephe
                                               _____
                                               Paul G. Gardephe
                                               United States District Judge